IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SANDRA HARPER, individually and for the benefit of all statutory beneficiaries of JAMES HARPER and as the EXECUTOR of the Estate of JAMES HARPER, | § § § § § | |
| Plaintiff, | § § § | CIVIL ACTION NO. 3:14-CV-2647 |
| v. | § § § | JURY TRIAL DEMANDED |
| THE CITY OF DALLAS, TEXAS, AND BRIAN ROWDEN, | § § § § | |
| Defendants. | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

COMES NOW, Sandra Harper, individually and for the benefit of all the statutory beneficiaries of the decedent and as the surviving parent of James Harper and as the executor of the Estate of James Harper and complaining of Defendants, The CITY OF DALLAS, Texas, more particularly The CITY OF DALLAS Police Department, by and through its agent and servant acting in his official capacity, Officer Brian Rowden ("Rowden") and in his official capacity as a Dallas police officer and for cause would show the Honorable Court as follows:

## NATURE OF THE ACTION

1.      This is an action brought by the Plaintiff against The CITY OF DALLAS for Dallas Police Officer Rowden's individual use of deadly force, assault, unlawful arrest and detention resulting in the wrongful death of James Harper ("Harper") under the color of law in violation of his individual rights under the Fourth and Fourteenth Amendments of the United States Constitution and in violation of his civil rights pursuant to 42 U.S.C. § 1983. Furthermore, Plaintiff is entitled to recover individually and as representatives for the Estate of

James Harper to the full extent applicable by law under the Texas Wrongful Death Statute, Tex. Civ. Prac. & Rem. Code Ann. § 71.001, et seq., the Texas Survival Statute, Tex. Civ. Prac. & Rem. Ann. Code § 71.021, and all other applicable laws complaining of the various acts listed below and for their wrongful death and survival cause of action.

2.      Plaintiff alleges that The CITY OF DALLAS and its policy makers delegated with the authority for setting policies, including training of the DPD officers, the Dallas City Council, the City Manager and Chief of Police, David O. Brown ("Brown") had a duty, but failed to implement and/or enforce policies, practices and procedures for the DPD that respected James Harper's constitutional rights to protection and equal treatment under the law.  This duty was delegated to Chief Brown by the Dallas City Council.  Defendant The CITY OF DALLAS and Chief Brown's failure to implement the necessary policies and the implementation of unconstitutional policies deprived James Harper of equal protection and due process under the Fourteenth Amendment and caused his unwarranted and excruciating physical and mental anguish and death.  For these civil rights violations and other causes of action discussed herein, Plaintiff seeks answers and compensation for their damages and the wrongful death of James Harper.

## **PARTIES**

3.      Plaintiff, Sandra Harper is a citizen of the United States and a resident of Dallas County, Texas.  Sandra Harper is the mother of James Harper, decedent, and brings this wrongful-death action pursuant to the Texas Survival Statute, Tex. Civ. Prac. & Rem. Code § 71.021, as the parent of James Harper who, at the time of his death, was a resident of Dallas County, Texas.

4.      Defendant The CITY OF DALLAS, is a municipality located in Dallas County,

Texas. The CITY OF DALLAS operates the Dallas Police Department ("DPD").  The CITY OF DALLAS funds and operates the DPD, which, along with the Dallas City Manager's office, Chief Brown and Mayor Rawlings are responsible for the implementation of the police department's budget, policies, procedures, practices, and customs, as well as the acts and omissions, challenged by this suit.  The CITY OF DALLAS POLICE DEPARTMENT is also responsible for preventive, investigative, and enforcement services for all citizens of The CITY OF DALLAS. The CITY OF DALLAS may be served with citation herein by and through its agent for service of process, Warren Ernst, City Attorney, Dallas City Hall, 1500 Marilla Street, Dallas, Texas 75201.  Additional service is being made on Mayor Mike Rawlings, 1500 Marilla Street, Room 5EN, Dallas, Texas 75201.

5.      Defendant Brian Rowden, upon information and belief, is a resident of Dallas County, Texas, and at all times material herein was a police officer acting in the course and scope of his employment for The CITY OF DALLAS and DPD.  Defendant Rowden may be served with citation at the Dallas Police Department, 1400 S. Lamar, Dallas, Texas 75215 or wherever he may be found.

## JURISDICTION AND VENUE

6.      Jurisdiction exists in this court pursuant to 28 U.S.C. §§ 1331 and 1343 as this action is brought under, inter alia, the Fourth and Fourteenth Amendments of the United States Constitution and 42 U.S.C. § 1983, to redress the deprivation of rights, privileges and immunities guaranteed to decedent, James Harper, by constitutional and statutory provisions.  Plaintiff further invokes the supplemental jurisdiction of this court pursuant to 28 U.S.C. § 1367 to adjudicate pendent claims arising under the laws of the State of Texas.

7.      Venue is proper in this court because the causes of action occurred within the

Northern District of Texas, Dallas Division.

## STATE ACTION

8.      To the extent applicable, Defendant Brian Rowden was acting under color of state law when he subjected James Harper to the wrongs and injuries hereinafter set forth.

## FACTS

9.      On or about July 24, 2012, officers with the DPD allegedly received a 911 call reporting that an unknown individual(s) had been kidnapped and transported to a residence located in the 5300 block of Bourquin Street.  It was unknown at the time who made this call but it was later determined to be bogus.  Harper was not aware of the bogus call.

10.      Not aware of what was transpiring outside of the residence, James Harper, a 31 year old unarmed black male, and other occupants of the home, upon information and belief, heard what sounded like someone trying to break in and made a decision to leave out the back of the home to escape what they perceived to be a dangerous situation.

11.       Once outside, Harper jumped a fence as he ran away but was grabbed from behind by a Dallas Police Officer identified as Defendant Brian Rowden, for no lawful reason. Harper had not committed any crime when Defendant Rowden initiated a foot pursuit in which the deadly conduct began and was not aware of what was going on or who was pursuing him.

12.      According to an eyewitness and upon information and belief, Defendant Rowden chased Harper down at which point he began to physically assault him.  Harper, fearing for his life, was able to escape and attempted to run away but was once again pursued and tackled to the ground by Defendant Rowden who initiated another assault on Harper and placed him under arrest.  Despite the claims made by Defendant Rowden that he was attacked by Harper and/or he thought Harper had a weapon, Harper was not observed attacking Defendant Rowden, he did

not have a weapon nor did he place Defendant Rowden in fear of imminent danger or serious bodily injury as he claimed when Officer Rowden shot him at least three times in cold blood. Harper at all times was attempting to fend off the vicious and unprovoked attack by Defendant Rowden and was not attempting to harm Defendant Rowden when he was shot in cold blood.

13.     Defendant Rowden had no probable cause or reasonable suspicion to believe that Harper was or had committed a crime.  In fact, when Defendant Rowden arrived to the residence, Harper attempted to leave after hearing commotion outside of the residence because he was unaware of what was going on outside of the home and did not want any problems. Despite this, Defendant Rowden chased Harper although he had no knowledge who he was pursuing or the reason why.  Defendant Rowden did not issue any verbal commands for Harper to stop as he pursued him.  This caused Harper to fear for his life as he attempted to escape from what he perceived to be imminent danger and/or the threat of serious bodily injury.

14.     Defendant Rowden fatally shot Harper three times, without warning,  after Harper attempted to escape his vicious attacks.  Based upon eyewitness testimony, Officer Rowden was not in any imminent danger and Harper did nothing to cause Defendant Rowden to fear for his life.  Officer Rowden was the aggressor and according to an eyewitness account, shot Harper in cold blood because he appeared to be physically exhausted and did not want Harper to get away.

15.     As a result of Defendant Rowden's deadly and unlawful attacks on Harper, Harper sustained multiple injuries, including injuries to his face, his right ear, chest, left and right side of his abdomen, his left and right flanks, the lateral left hip, the left side of the back, the posterior right wrist, the medial left thigh and the posterior right thigh, abrasions on the lateral right arm, the posterior left arm, the posterior left forearm, the posterior left pinkie finger, his right hand, right knee, right leg, right and left ankles, in addition to the fatal gunshot wounds.

By internal examination, there was also an one inch focus of left frontal subscalpular hemorrhage as well as hemorrhage within the right temporalis muscle.  The superior-most right sternocleidomastoid muscle had scant fascial hemmorhage.

16.     Defendant, The CITY OF DALLAS and DPD has a longstanding record of not providing DPD officers with adequate training, not preventing excessive and deadly force and extrajudicial killings by Dallas Police officers.   The actual practice or custom of the DPD regarding the use of deadly force is to "shoot first and ask questions later."   Dallas City Councilman Dwaine Caraway confirmed to newsmakers that the city council and The CITY OF DALLAS had in fact delegated policy-making authority to Chief Brown, giving him the responsibility for setting training policies and that there are training issues which have resulted in the killing of unarmed individuals.  As a result of the lack of training and the official custom or policies of the DPD, City Councilman Caraway acknowledged that there is an issue with police training and also voiced his concerns with the eight deadly police shootings in 2012.  After the shooting death of Harper, Chief Brown admitted that there was a need for a foot pursuit policy and additional police training.   "The lack of police training has led to the following incidents and/or statistics:

- Dallas is at the top of the list of police misconduct stats in the South, along with Houston, San Antonio and Irving
- Dallas ranked #11 in the highest police misconduct rates, ranking higher than all of Orange County, California.
- Dallas ranked second nationally in police misconduct incidents, behind #1 New Orleans.
- Since 2001, over 60 unarmed black men have been killed by Dallas Police Department

17.    Harper was the 14th shooting by a Dallas Police Officer in 2012.  Eight were fatal. There were 18 officer-involved shootings in 2010 and 17 in 2009.  In 2013 alone, there's been at least 12 Dallas Police shootings of unarmed individuals.  On or about October 14, 2013, a DPD officer shot Bobby Bennett ("Bennett"), an unarmed individual, and attempted to  falsify a police report.  David Blair, an unarmed individual was standing outside of his east Oak Cliff apartment on October 2, 2013, when a pair of Dallas Police Officers approached him and shot at him 14 times for no lawful reason.  Blair's story surfaced just a week after a video circulated of a Dallas police officer shooting Bennett, a man with mental challenges, after he stood up from a chair he set in the middle of a cul-de-sac.  Police initially claimed the man lunged at them, but the video showed otherwise. An aggravated assault charge against the wounded man has since been dropped.  On December 10, 2013, 19-year-old Kelvion Walker was still in the vehicle with his hands up when a Dallas police officer shot him.  There exist, a persistent, widespread practice of police shootings that results from the training or lack thereof, received by DPD officers.  Upon information and belief, DPD officers are trained by individuals with little or no experience working in the field.

18.    Recommendations for revisions in the DPD's policies and procedures regarding the use of deadly force were made by Geoffrey P. Alpert in 1987.  It was stated in the report that to reduce the police use of deadly force in Dallas, and at the same time to protect the safety of the citizens and officers, a new philosophy and a new approach would be required.  In order for Dallas to enter the 1990's with a set of police policies, procedures and customs commensurate with its high set of municipal values, a conscious decision must be made to overhaul a system creaking with age and tradition, and made obsolete by the challenges of a new generation of citizens.

19.     After the death of Harper, Chief Brown indicated that the following policies and

procedures would be implemented but did has yet to formally implement each:

a**.     Formalize a process of concurrent investigative review with the FBI Civil Rights Office of all officer involved shootings**
This step will help reassure the public that the Dallas Police Department is conducting a detailed and comprehensive investigation and that the findings are based upon facts uncovered by the investigation. The Police Department has requested the FBI to conduct this type of review on several occasions, the most recent of which is the James Harper shooting.

**b.     Implement a more comprehensive Response to Resistance reporting system**
A Response to Resistance report details the actions a suspect took against an officer and the steps an officer was required to take to overcome this resistance. A comprehensive reporting system will allow for a more detailed analysis of incidents involving violence against officers and their response. Information gained will assist in developing and refining tactics, training and policy. The report will also provide public transparency regarding the amount of force officers take in the performance of their duties.

**c.     Develop a foot pursuit policy**
A formalized foot pursuit policy enhances officer safety by providing officers with a foundation on which to make decisions during these high risk activities with the intent of reducing hazardous consequences and preventing, when possible, the escalation of enforcement action into lethal force confrontations.

**d.     Re-implement the Digital Video Recorder (DVR) Review Team**
The DVR Team had been temporarily inactive while a panel of Police Deputy Chiefs reviewed the proper role for the Team. The dash cam video reviews conducted by this team can serve as a training tool for the Department while building public confidence that the Department proactively examines officer performance to ensure compliance with departmental and public expectations.

**e.     Implement a mandatory electronic control weapon (Taser) training policy for all officers**
Currently, all officers that are trained with an electronic control weapon are required to carry one if available.

**f.     Enhance the Department's consensual search policy to include the requirement for a written and/or recorded consent**
Implementing this step will create greater public confidence in the consensual searches performed by Dallas Police Officers, protect officers against false allegations of illegal search and bolster court cases where the search is critical to proving the charge.

**g.     Research best practices that have come from critical incidents or institutional failures in public safety from around the nation**

In recent years several major city police departments have been placed under consent decrees. The Dallas Police Department proposes to research the positive practices and policies that have been developed as a response to these failures as a way to improve our own training, policy, officer safety and service delivery. Included in this step will be a review of the recommendations stemming from the 1988 Congressional Hearings that occurred in Dallas.

**h.       Assemble a special Community Policing Strategic Team of officers for the Dixon Circle community**

This step will create a special team of officers responsible for addressing chronic crime and underlying quality of life issues present in the Dixon Avenue community while opening sustainable communications with this neighborhood to build trust between the residents and the Police Department. The Police Athletic League will play a vital role in this team effort to provide constructive alternatives for youth in the area. If successful, this concept will serve as a model for effecting positive change in other communities with similar crime and quality of life issues.

20.     The Dallas City Council, which authorized the aforementioned study outlined the five major areas to be examined. These include:

a) The Police Officer Applicant Selection Process;
b) Teaching Methods and Materials on the Use of Deadly Force;
c) "Shoot-Don't-Shoot" Training;
d) Weapons' Training; and
e) Policies Relating to the Use of Deadly Force.

21.     As aforementioned above, Defendant Rowden attacked James Harper, using excessive and deadly force for no lawful reasons.  During this time, Defendant Rowden viciously beat Harper and continued his assault upon him by delivering three fatal shots, without any warnings, killing him in cold blood.

22.     There is no evidence that Defendant Rowden was in imminent danger or in fear of serious bodily injury.  There were no signs of any visible injuries or bruising to Defendant Rowden's body that would indicate or suggest that the use of deadly force was justified.  The DPD Drawing or Displaying Firearms policy requires that a threat or reasonable belief that there is a threat to life or they have reasonable fear for their own safety and/or the safety of others, exist in order to authorize an officer to draw or display her/his firearm.  Upon information and

belief, DPD officers are not provided with adequate training. Once a year, Chief Brown requires DPD Officers to receive both active and simulating training, with the majority of the training requiring shooting. This policy has led to high number of police shootings in Dallas.

23. As made clear from eyewitnesses, Harper posed no risk to Defendant Rowden or any other person in the immediate area when he attempted to flee from what he perceived to be imminent danger.

24. There is no indication that Defendant Rowden attempted to use his intermediate weapon before resulting to the use of deadly force. General Order 901.04(D)(3) Levels of Control ; Electronic Control Weapon (taser) is an intermediate weapon, and is only justified for situations when the officer believes empty hand control will be ineffective. Empty hand control techniques include joint locks, pressure points, Oleoresin Capsicum Spray, hand held aerosols, and pepper ball saturation, none of which occurred before the drawing of Defendant Rowden's duty weapon.

25. At the time Defendant Rowden drew his weapon, Harper had not done anything to justify Defendant Rowden's use of deadly force. Harper was unarmed at the time he was shot in cold blood and had not placed Defendant Rowden in fear of imminent death or seriously bodily injury. The drawing of an Officer's weapon inherently assumes that the use of force will cause death or serious bodily injury to the suspect, and is to be applied under very narrowly defined circumstances. According to Dallas Police General Order 906.02(D) Authorization to Use Deadly Force authorized by Chief Brown, "Officers will only use deadly force to protect themselves or another person from imminent death or seriously bodily injury". General Order 906.02(E) Drawing or Displaying Firearms; requires that a threat or reasonable belief that there is a threat to life or they have reasonable fear for their own safety and/or the safety of others,

exist in order to authorize an officer to draw or display her/his firearm.  Harper posed no risk to Defendant Rowden, or any other person by attempting to leave the residence he was visiting.

26.    Defendant Rowden's unlawful and unwarranted acts, lack of training and the official customs or policies of the DPD caused James Harper's wrongful death.

27.    Plaintiff would show that at all times material hereto, Defendant Rowden was acting in the scope of his employment as agent, servant, and employee of Defendant The CITY OF DALLAS, specifically the DPD, within its executive branch and was performing a governmental function.

28.    Plaintiff would further show that Defendant Rowden's actions were the result of, or within the scope of, wrongful and reckless customs, policies, practices and/or procedures of the DPD in regards to the use of deadly force for which The CITY OF DALLAS and Chief Brown knew or should have known but never provided the requisite and proper training.

29.    Harper was thirty one (31) years old when he was killed by Defendant Rowden. He was in good health, with a reasonable life expectancy of living at least 53 more years to age 84.

30.    Moreover, no reasonably competent official would have concluded that the actions of Defendant Rowden described herein would not violate James Harper's rights. In other words, no reasonably prudent police officer under similar circumstances, could have believed that Defendant Rowden's conduct was justified.

31.    As a direct and proximate result of Defendants' conduct, Plaintiff has sustained substantial damages and pecuniary loss.

32.    Upon information and belief, the DPD has not implemented policies and procedures to aggressively curtail deadly shooting cases and foot pursuits that have been a major

problem since the early eighties when the DPD was the subject of a Federal Investigation and continues to exist today.

## EXCESSIVE FORCE
### COUNT I-42 U.S.C. § 1983

33.     Plaintiff incorporates by reference paragraphs 1 through 32 as if fully set forth herein.  Plaintiff would show that Defendant Rowden's actions on the occasion in question were wrongful and constituted gross negligence in depriving Harper of his constitutional rights, as alleged more fully below.

34.     Plaintiff would show that at all times material hereto, Defendant Rowden had a duty to avoid infliction of unjustified bodily injury to Harper, to protect his bodily integrity and to not trample on his constitutional rights.

35.     Plaintiff would show that Defendant Rowden failed to act as a reasonable police officer would have acted in the same or similar circumstances.  That is, Defendant Rowden, without justification and the need to do so, shot and used excessive and deadly force as described above and killed Harper in cold blood without warning, probable cause and/or legal justification. Harper did not make any threatening gestures towards the Defendant Rowden and did not place him in fear of imminent death or serious bodily injury.

36.     Plaintiff would further show that Defendant Rowden shot Harper three times, causing bruising and multiple wounds to his body.  Harper died as a result of multiple shots fired to his body by Defendant Rowden.  The excessive and deadly force used by Defendant Rowden was not reasonable, justified nor was it necessary under the circumstances.

37.     Defendant Rowden's actions were not objectively reasonable because he followed a procedure designed to inflict excessive and deadly force in restraining individuals in a non-life threatening situation.  Harper was shot 3 times while he was subdued.

38.     Plaintiff would show that the Defendant Rowden denied James Harper his right to be free from a deprivation of his rights without due process of law, in violation of the Fourth Amendments to the United States Constitution.   Plaintiff would also show that Defendant Rowden was acting within custom, policy, practice and/or procedure of the DPD in regards to the use of deadly force as authorized and/or ratified by Chief Brown at the time of the incident. Plaintiff would further show that as a result of these violations of James Harper's rights, Plaintiff has suffered damages within the jurisdictional limits of this court.

39.     The force used by the Defendant Rowden was unnecessary and unreasonable under the circumstances, as James Harper, attempting to escape the grips of a vicious beating, did not require the use of such excessive and deadly force.   Defendant Rowden was not placed in fear of imminent death and/or a fear of serious bodily injury.

**RACIAL PROFILING**
**COUNT II - CIVIL RIGHTS ACTION**

40.     Plaintiffs incorporate by reference paragraphs 1-39 as if fully set forth herein.

41.     Racial Profiling:   Plaintiff would show that Defendant Rowden clearly and wrongfully used race as a factor, a proxy, for reasonable suspicion and using excessive and deadly force on Harper.   Additionally, Plaintiff would show that it is the official customs, policies and practices of the DPD in regards to the use of deadly force as authorized and/or ratified by Chief Brown to treat African Americans in a cruel manner regardless of the circumstances or the need to.   The facts show that there was no probable cause for Harper's arrest.   In fact, Plaintiff would show that the excessive and deadly force used by Defendant Rowden was not reasonable nor was it necessary as Harper was not violating any laws. Defendant Rowden treated Harper in the manner he did because he was black.   The poor treatment of African Americans by the DPD, mainly Defendant Rowden, is a well known fact in

Dallas, Texas.  Plaintiff would show that Defendant Rowden's actions were in violation of TEX. CODE CRIM. PROC. ANN. Art. 2.131-137 (Vernon Supp. 2004) and is therefore strictly liable to Plaintiff.

42.     Plaintiff would show that Defendant Rowden was acting within established wrongful and reckless customs, policies, practices and/or procedures of the DPD in regards to the use of deadly force as authorized and/or ratified by Chief Brown at the time of the incident and further that the Defendant The CITY OF DALLAS  knew or should have known of these said malicious customs, policies, practices and/or procedures for which Chief Brown knew or should have known but never provided the requisite and proper training. Plaintiff would further show that as a result of these violations of Harper's rights, Plaintiff has suffered damages within the jurisdictional limits of the Court.  Defendant Rowden under the color of law, deprived Harper of his civil rights, privileges or immunities secured by the Constitution and laws pursuant to 42 U.S.C. § 1983.

## **FAILURE TO TRAIN**
### **COUNT III - 42 U.S.C. § 1983**

43.     Plaintiff incorporates by reference paragraphs 1 through 42 as if fully set forth herein.

44.     Defendant Rowden, acting under color of law and acting pursuant to customs, practices and policies of The CITY OF DALLAS and the DPD in regards to the use of deadly force and foot pursuits as authorized and/or ratified by Chief Brown deprived Harper of rights and privileges secured to him by the Fourteenth Amendment to the United States Constitution and by other laws of the United States, by failing to provide proper training in the use of deadly force and foot pursuits in violation of 42 U.S.C. § 1983 and related provisions of federal law and in violation of the above cited constitutional provisions.  The City Council, DPD and Chief

Brown deliberate indifference in failing to train based on the obviousness of the need for training has resulted in a  number of shootings involving unarmed individuals, including Harper.

45.     With respect to the claims made the basis of this lawsuit, The CITY OF DALLAS and the DPD failed to adequately train its employees regarding the use of deadly force and foot pursuits. This failure to train its employees in a relevant respect reflects a deliberate indifference to the Dallas City Council, The CITY OF DALLAS, DPD and Chief Brown to the rights of the city's inhabitants and is actionable under 42 U.S.C. § 1983.

46.     Defendant The CITY OF DALLAS and DPD under the direction of the City Council and Chief Brown developed and maintained a policy of deficient training of its police force in the use of force, including the use of deadly force in the apprehension of individuals. The CITY OF DALLAS ' training is designed and implemented by Chief Brown to act in this regard.  The actual practice or custom of the DPD  regarding the use of deadly force was to "shoot first and ask questions later."

47.     The CITY OF DALLAS and the DPD's' failure to provide adequate training to its police officers regarding the use of deadly force reflects deliberate indifference by the City Council and Chief Brown and reckless and conscious disregard for the obvious risk that officers would use excessive or deadly force on citizens and made the violations of James Harper's constitutional rights, including his death, a reasonable probability.

48.     Plaintiff would show that Defendant Rowden's actions were the result of, or within the scope of, wrongful and reckless customs, policies, practices and/or procedures for which the City Council, The CITY OF DALLAS and Chief Brown knew or should have known but never provided the requisite and proper training.

49.     On information and belief, Dallas City Council, Defendant The CITY OF DALLAS, DPD and Chief Brown, acting through official policies, practices, and customs, and with deliberate, callous, and conscious indifference to the constitutional rights of Harper failed to implement the policies, procedures; and practices necessary to provide constitutionally adequate protection and assistance to Harper during his struggle to survive and implemented policies, procedures, and practices which actually interfered with or prevented with or prevented Harper from receiving the protection, assistance and care he deserved.

50.     For instance, the following conduct, policies, and customs, *inter alia*, by Defendants violated Harper's constitutional rights:

a. The Dallas City Council, The CITY OF DALLAS' and the DPD failure to adequately train or discipline its officers;

b. Defendants' policy on the use of deadly force, which encourages officers to shoot first and ask questions later;

c. Defendants' foot pursuit policy;

d. Failing to recognize officers with emotional problems based on prior violations;

e. Failure to conduct the type of investigation that would have been conducted had he not been a minority or a resident in a high crime area;

f. Failure to get more police employees properly trained to professionally handle foot pursuits.

g. 72-hour waiting period policy allows perpetrators of deadly shootings to walk free.

51.     In addition, the Dallas City Council, Defendant CITY OF DALLAS, DPD and Chief Brown as applicable, failed and refused to implement customs, policies, practices or procedures, and failed to train its personnel adequately on the appropriate policies, practices or procedures regarding the use of deadly force or when and how to initiate a foot pursuit.  In so

doing, Defendant The CITY OF DALLAS knew that it was acting against the clear dictates of current law, and knew that as a direct consequence of their deliberate decisions, the very situation that occurred -- *i.e.*, Harper's death -- in all reasonable probability would occur.

52.     Defendants' actions demonstrate that before his death Harper was the victim of purposeful discrimination, either because of his race and/or gender, or due to an irrational or arbitrary state classification unrelated to a legitimate state objective.

53.     Additionally, no rational basis existed for The CITY OF DALLAS and the DPD's alleged policies of affording minorities less police protection or assistance than other crime victims or giving these victims less investigative attention than other victims.   Furthermore, unlike what officer Rowden did, no reasonably prudent police officer, under similar circumstances, would have used deadly force or would initiated a foot pursue with first confirming they had the right person.   Moreover, no reasonably competent official would have concluded that the actions of The CITY OF DALLAS and Defendant Rowden described herein would not violate Harper's rights.   In other words, no reasonably officer, under similar circumstances, could have believed that their conduct was justified.

54.     The CITY OF DALLAS and the DPD's failure to properly train its police officers regarding the use of force under the authority of Chief Brown was the proximate cause of the violations of Harper's constitutional rights including the unnecessary taking of his life.

**FALSE ARREST**
**COUNT IV – 42 U.S.C. § 1983**

55.     Plaintiff incorporates by reference paragraphs 1 through 54 as if fully set forth herein.

56.     Additionally, and in the alternative, Plaintiff would show that Defendant Rowden's actions were objectively unreasonable and done in bad faith in that he arrested Harper

without probable cause, while physically assaulting him and subsequently fatally shooting him for no lawful reason.  Harper did not commit a crime as the evidence would show and simply was trying to escape what he perceived a dangerous situation.  Plaintiff would further show that tshe suffered damages within the jurisdictional limits of this court as a result of the wrongful arrests and that such arrests were done under the color of law.  Plaintiff would show that Defendant Rowden was acting within the official customs, policies, practices and/or procedures in regards to the use of excessive and deadly force as authorized and/or ratified by the Dallas City Council, City Manager Gonzalez, Chief Brown and The CITY OF DALLAS at the time of the incident.  Plaintiff would additionally show that such wrongful arrest was done in violation of Harper's rights under the Fourth Amendment of the United States Constitution, as incorporated to the states by the Fourteenth Amendment, and that Plaintiff has suffered damages within the jurisdictional limits of this court as a result of the violations of his rights.

57.     Defendant Rowden was acting under the color of law when he deprived Harper of his constitutional rights to be free from false arrest.

58.     Additionally and in the alternative, Plaintiff would show that Defendant Rowden's actions were objectively unreasonable and done in bad faith because he was without probable cause to think that Harper had committed a crime.  Plaintiff would further show that she's suffered damages within the jurisdictional limits of this court from the wrongful arrest done under color of law.  Plaintiff would show that Defendant Rowden was acting within custom, policy, practice and/or procedure of The CITY OF DALLAS and DPD in regards to the use of excessive and deadly force as authorized and/or ratified by the Dallas City Council, City Manager Gonzalez and Chief Brown at the time of the incident.  Plaintiff would additionally show that such wrongful shooting was done in violation of James Harper's rights under the

Fourth Amendment of the United States Constitution, as incorporated to the states by the Fourteenth Amendment, and that Plaintiff has suffered damages within the jurisdictional limits of this court as a result of these violations of their rights.

## ASSAULT AND BATTERY
### COUNT V

59.     Plaintiff incorporates by reference paragraphs 1 through 58 as if fully set forth herein.

60     Defendant Rowden intentionally and without consent placed Harper in apprehension of imminent harmful contact and caused harmful bodily contact to Harper.

61.     As a proximate result of the foregoing, Harper suffered grievous bodily harm, substantial physical and emotional pain, and the loss of life.

## NEGLIGENT FAILURE TO TRAIN AND DISCIPLINE
### COUNT VI

62.     Plaintiff incorporates by reference paragraphs 1-61 as if fully set forth herein. Additionally and in the alternative, Plaintiff would show that at all times material hereto, the DPD lacked guidelines both to restrict the use of force, including the use of tasers and to monitor the proper use of tasers, or, if such guidelines existed, they were grossly inadequate to ensure the proper and restrained use of force including tasers by police personnel.

63.     Plaintiff would show that Defendant The CITY OF DALLAS, the Dallas City Council, Chief Brown and Mayor Rawlings endorsed and/or ratified the unfettered use of deadly force, including a taser, even in situations where no crime was committed.  Plaintiff would show that Defendant The CITY OF DALLAS, Chief Brown and the DPD's failure to properly train, supervise, test, regulate, discipline or otherwise control its employees and the failure to promulgate proper guidelines for foot pursuits and the use of force including fire arms and tasers

constitutes a custom, policy, practice and/or procedure in condoning unjustified use of deadly force in violation of the constitutional rights of Harper.  Furthermore, Defendant The CITY OF DALLAS' and the DPD's failure to properly train, supervise, test, regulate, discipline or otherwise control its employees in regards to the use of deadly force as authorized and/or ratified by Chief Brown serves to condone the improper behavior previously alleged.  As a result of this failure to train and discipline, Plaintiff has suffered damages within the jurisdictional limits of this court.  As described above, Defendant Rowden used deadly force when it was unnecessary despite the lack of any threat necessitating the need to do so.

### INTENTIONAL AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### COUNT VII

64.     Plaintiff incorporates by reference paragraphs 1 through 63 as if fully set forth herein.  Plaintiff would show if Defendant Rowden was acting in his individual capacity, when he committed the following intentional torts against Harper:

      a.     Assault and Battery; and

      b.     False Imprisonment.

65.     As a direct and proximate result of the actions of Defendant Rowden, Plaintiff suffered pain and suffering, mental anguish, and severe emotional distress, loss of support and companionship damages within the jurisdictional limits of this court.

66.     Defendant Rowden embarked on a willful, malicious, reckless and outrageous course of conduct that was intended to cause and, in fact, caused Harper to suffer extreme and severe mental and emotional distress, agony and anxiety.

67.     Defendant Rowden's aggressive and violent attack on an unarmed, fleeing, and defenseless man offends generally accepted standards of decency and morality.

## GROSS NEGLIGENCE
### COUNT VIII

68.     Plaintiff incorporates by reference paragraphs 1 through 67 as if fully set forth herein.

69.     Defendant Rowden had a duty to employ only reasonable measures in the treatment of the decedent.

70.     Notwithstanding said duties, Defendant Rowden acted in a wanton and willful manner, exhibiting such carelessness and recklessness as to evince a conscious disregard for the life and safety of Harper.

71.     Defendant Rowden was aware that Harper had not committed a crime and Defendant Rowden was not facing any imminent or serious threat of bodily harm or death.  Thus, he knew or should have known that he had no right to use any force whatsoever with respect to James Harper.  He nonetheless illegally apprehended Harper through his use of excessive and deadly force by shooting him three times in cold blood without warning.

72.     Defendant Rowden knew or should have known that his course of action of drawing his lethal weapon and firing it at Harper would place him in grave danger of serious injury, which it did.

73.     As a direct and proximate result of the gross negligence of Defendant Rowden, Plaintiff has suffered damages.

## TEXAS SURVIVAL ACTION
### COUNT IX

74.     Plaintiff incorporates by reference paragraphs 1 through 73 as if fully set forth herein.

75.     Pursuant to Tex. Civ. Prac. & Rem. Code Ann. § 71.021, the decedent's right of action for wrongful and negligent conduct by Defendant Rowden survives in favor of heirs, legal representatives, and the estate of the deceased.

76.     Prior to his death, James Harper had a survival action for himself.

77.     Defendants are liable to Plaintiff for the loss of Harper's life, pain and suffering, and the violation of his civil rights.

## TEXAS WRONGFUL DEATH ACT
### COUNT X

78.     Plaintiff incorporates by reference paragraphs 1 through 77 as if fully set forth herein.

79.     Plaintiff is the legal administrator for the estate of James Harper.

80.     Plaintiff Sandra Harper is a statutory beneficiary of James Harper and relied on him for love, affection, comfort, financial assistance, protection, affection and care.

81.     Harper died as a result of Defendant Rowden's wrongful conduct.

82.     Harper would have been entitled to bring this action against Defendant Rowden if he had lived.

83.     By reason of Defendant Rowden's wrongful conduct of shooting to death an unarmed individual without the imminent threat of serious bodily harm, Defendants are liable for damages.

84.     Defendant Rowden's conduct that caused Harper's death was a producing cause of injury to Harper, which resulted in the following damages: loss of a family relationship, love, support, services, emotional pain and suffering, and for his intentional and reckless acts and infliction of emotional distress caused by the wrongful killing of Harper.

85.     Plaintiff seeks unliquidated damages within the jurisdictional limits of this Honorable Court.

86.     Harper's death resulted from Defendant Rowden's willful act or omission or from Defendant Rowden's gross negligence, which entitles James Harper's heirs to exemplary damages under the Texas Constitution article 16, section 26.

## DAMAGES ALL DEFENDANTS
### COUNT XI

87.     Plaintiff incorporates by reference paragraphs 1 through 86 as if fully set forth herein.  Defendants' acts and/or omissions were a proximate cause of the following injuries suffered by Plaintiff and decedent:

      a. Actual damages;

      b. Loss of affection, consortium, comfort, financial assistance, protection, affection and care;

      c. Pain and suffering and mental anguish suffered by James Harper prior to his death;

      d. Mental anguish and emotional distress suffered by Plaintiff;

      e. Loss of quality of life;

      f. Funeral and burial expenses;

      g. Loss of service;

      h. Loss of earnings and contributions to Plaintiff;

      i. Exemplary and punitive damages as well as reasonable attorneys' fees and costs of court;

      j. Pursuant to 42 U.S.C. §1988, and other applicable laws, Plaintiff should be awarded reasonable attorney's fees for the preparation and trial of this

cause of action, and for its appeal, if required;

k. Prejudgment interest; and

l. Post judgment interest.

88.    Plaintiff seeks unliquidated damages in an amount that is within the jurisdictional limits of the court.

## PUNITIVE/EXEMPLARY DAMAGES
## XII

89.    Plaintiff incorporates by reference paragraphs 1 through 88 as if fully set forth herein.  Additionally and in the alternative, the conduct of Defendant Rowden was done with malice.  As such, Plaintiff requests punitive and exemplary damages to deter this type of conduct in the future.  In the alternative, such heedless and reckless disregard of James Harper's rights, safety and welfare is more than momentary thoughtlessness, inadvertence or misjudgment.  Such unconscionable conduct goes beyond ordinary negligence, and as such Plaintiff requests punitive and exemplary damages are awarded against Defendant Rowden in a sum which is within the jurisdictional limits of this court.

## COSTS AND ATTORNEY FEES

90.    Plaintiff incorporates by reference paragraphs 1 through 89 as if fully set forth herein.  Plaintiff is entitled to an award of attorney fees and costs under 42 U.S.C. § 1988(b).  As such, Plaintiff requests the Court to award costs and attorney fees incurred in Plaintiff's prosecution of this litigation.

## JOINT AND SEVERAL LIABILITY

91.    Plaintiff incorporates by reference paragraphs 1 through 90 as if fully set forth herein.  Plaintiff would show that Defendants were jointly and severally liable for the negligence and gross negligence, which was the proximate cause of Plaintiff's injuries.

## CONDITIONS PRECEDENT

92.     Plaintiff reserves her rights to plead and prove the damages to which they are entitled to at the time of trial.  All conditions to Plaintiff's recovery have been performed or have occurred.

## TRIAL BY JURY

93.     Plaintiff has paid a jury fee and demands trial by jury.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that Defendants be cited to appear and answer herein; that upon final trial hereof Plaintiff has and recovers judgment from Defendants; actual damages, exemplary damages, pre-judgment interest at the legal rate; interest on said judgment at the legal rate; costs of court; and such other and further relief, both general and special, at law and in equity, to which Plaintiff may show herself justly entitled.


Respectfully submitted,


By: _/s/ Daryl K. Washington_____
DARYL K. WASHINGTON
State Bar No. 24013714
**LAW OFFICE OF DARYL K. WASHINGTON, P.C.**
325 N. St. Paul St., Suite 1975
Dallas, Texas  75201
214 880-4883
214-751-6685 - fax

**ATTORNEYS FOR PLAINTIFF**