IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TONY S. HARPER, SANDRA HARPER, | § | |
| *individually and for the benefit of all* | § | |
| *statutory beneficiaries of James Harper* | § | |
| *and as the Estate of James Harper*, and | § | |
| KH, *a minor by and through her mother* | § | |
| *and guardian Ashlee Whadley*, | § | |
| | § | |
| Plaintiffs, | § | No. 3:14-cv-2647-M |
| | § | |
| V. | § | |
| | § | |
| THE CITY OF DALLAS, TEXAS, | § | |
| and BRIAN ROWDEN, | § | |
| | § | |
| Defendants. | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Defendants City of Dallas, Texas and Brian Rowden have filed a Motion to Exclude Testimony of the Plaintiffs' Retained Expert Witness Jerry Staton, *see* Dkt. No. 83 (the "Motion to Exclude"), which Chief Judge Barbara M. G. Lynn has referred to the undersigned United States magistrate judge for a hearing, if necessary, and for determination under 28 U.S.C. § 636(b), *see* Dkt. No. 86.

Plaintiffs Tony S. Harper, Sandra Harper, and KH filed a response, *see* Dkt. No. 96, and Defendants filed a reply, *see* Dkt. No. 101.

For the reasons and to the extent explained below, the Court GRANTS in part and DENIES in part Defendants' Motion to Exclude Testimony of the Plaintiffs' Retained Expert Witness Jerry Staton [Dkt. No. 83].

# Background

The pertinent factual background and procedural background is familiar to the parties and will not be recounted at length here.

As Plaintiff explained in a previous motion, "[i]n this lawsuit, Plaintiffs claim that the City is liable for damages resulting from the use of excessive force, assault, unlawful arrest and detention of James Harper, who – although unarmed and unthreatening and having committed no unlawful acts – was savagely beaten, as the evidence shows and then shot in cold blood by Defendant Officer Brian Rowden." Dkt. No. 79 at 1.

Defendants, for their part, describe the case as

center[ing] around an encounter between James Harper ("Harper") and former Dallas police officer Brian Rowden. On 24 July 2012, an anonymous 9-1-1 caller reported that an armed group of Latin males were leading an African-American male into a house on 5616 Bourquin Street, located in the Fair Park area of Dallas ("the House"). The kidnapping call was false and apparently arose out of an earlier altercation between the 9-1-1 caller and some members of a criminal street gang known as the 357 Dixon Crips, including James Harper, in which the 9-1-1 caller was assaulted. Three (3) uniformed Dallas Police Department ("DPD") officers, including Officer Rowden, responded to the call by going to the House, which was being operated as a drug house.

The officers attempted to make contact with the occupants of the House by knocking on the door and identifying themselves as police officers. Officer Begin made eye contact with one of the occupants, who quickly slammed a door shut. Concerned for the safety of the reported kidnap victim, Officer Rowden pushed aside a window-mounted air conditioner to see what was going on inside. Officer Rowden saw a gun, several unfired shotgun shells, and what appeared to be marijuana and cocaine on a table. He could also smell phencyclidine ("PCP"). Officer Rowden also saw four African-American males inside the House, one of whom took the gun and ran to the back of the House. Officer Rowden yelled "Police!" and heard glass breaking toward the back of the House.

Several adult males fled from the House. One suspect, Arthur Dixon, was quickly apprehended. A second suspect, James Fullwood, was able to evade the officers. Officer Begin took custody of Dixon while Officer Rowden chased Harper over some fences and through residential yards. A prolonged physical struggle ensued when Officer Rowden caught up to Harper. Harper disobeyed Officer Rowden's repeated commands to show his hands, and appeared to be trying to retrieve a possible weapon from his pant pocket. Officer Rowden shot fatally Harper when he believed that Harper was about to produce a weapon and kill Officer Rowden.

The Plaintiffs contend that Officer Rowden shot Harper without any lawful justification; Officer Rowden asserts that he shot Harper in self-defense when Harper appeared to be reaching for a weapon concealed in Harper's pant pocket during the physical struggle.

The Plaintiffs sue the Defendants under 42 U.S.C. § 1983, and allege the deprivation of Harper's Fourth Amendment right to be free from the use of excessive force in the course of a seizure. The Plaintiffs assert that the City is liable under § 1983 because of supposed deficiencies in DPD officer training and supervision. The Plaintiffs plead for compensatory and punitive damages. The Defendants deny all liability, and Officer Rowden asserts his entitlement to qualified immunity.

Dkt. No. 83 at 7-9 (footnote omitted).

More specifically, as to the Motion to Exclude, Defendants note that "Plaintiffs filed [Federal Rule of Civil Procedure] 26(a)(2) expert disclosures on 26 March 2017" and that Defendants then timely filed the Motion to Exclude. *Id.* at 7. They explain that "Plaintiffs have designated Staton as a retained expert witness on police procedures" and "have served Staton's written report containing his expert opinions and conclusions to be offered before the jury in this case (the 'Report'), and the Defendants have taken Staton's oral deposition." *Id.* at 9.

But, according to Defendants, "the bulk of Staton's opinions and conclusions as stated in his Report and deposition testimony relate to matters that may not be

presented by an expert witness, or to matters as to which Staton lacks adequate qualifications to present testimony," and so "Defendants ask the Court to enter an order excluding such testimony from the trial of this case." *Id.*

## Legal Standards

Federal Rule of Evidence 702 provides that a "witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise." FED. R. EVID. 702. The trial court acts as a "gatekeeper" to exclude expert testimony that does not meet relevancy and reliability requirements. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 590 (1993) (scientific testimony or evidence must be relevant and reliable). In this role, the Court determines the admissibility of expert testimony based on Rule 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and its progeny. "The court may admit proffered expert testimony only if the proponent, who bears the burden of proof, demonstrates that (1) the expert is qualified, (2) the evidence is relevant to the suit, and (3) the evidence is reliable." *E.E.O.C. v. S&B Industry, Inc.*, No. 3:15-cv-641-D, 2017 WL 345641, at *2 (N.D. Tex. Jan, 24, 2017) (internal quotation marks omitted; citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999)).

"Before a district court may allow a witness to testify as an expert, it must be assured that the proffered witness is qualified to testify by virtue of [her] 'knowledge, skill, experience, training, or education.'" *United States v. Cooks*, 589 F.3d 173, 179 (5th Cir. 2009) (quoting FED. R. EVID. 702). "A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a

particular field or on a given subject." *Id.* (citing *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999)). "Rule 702 does not mandate that an expert be highly qualified in order to testify about a given issue. Differences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility." *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009) (citation omitted).

To be relevant, "expert testimony [must] 'assist the trier of fact to understand the evidence or to determine a fact in issue.'" *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 245 (5th Cir. 2002) (quoting *Daubert*, 509 U.S. at 591). "Relevance depends upon 'whether [the expert's] reasoning or methodology properly can be applied to the facts in issue.'" *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 352 (5th Cir. 2007) (quoting *Daubert*, 509 U.S. at 593); *see also* FED. R. EVID. 702(d) (requiring that "expert has reliably applied the principles and methods to the facts of the case").

"Reliability is determined by assessing 'whether the reasoning or methodology underlying the testimony is scientifically valid.'" *Knight*, 482 F.3d at 352 (quoting *Daubert*, 509 U.S. at 592-93); *see also* FED. R. EVID. 702(c) (requiring that "testimony [be] the product of reliable principles and methods"). "The reliability prong mandates that expert opinion be grounded in the methods and procedures of science and ... be more than unsupported speculation or subjective belief." *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012) (internal quotation marks omitted). But "there is no requirement that an expert derive his opinion from firsthand knowledge or observation." *Deshotel v. Wal-Mart La., L.L.C.*, 850 F.3d 742, 746 (5th Cir. 2017) (internal quotation marks omitted).

"The focus, of course, must be solely on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 595. "The proponent need not prove to the judge that the expert's testimony is correct, but she must prove by a preponderance of the evidence that the testimony is reliable." *Johnson*, 685 F.3d at 459 (internal quotation marks omitted). But, if "there is simply too great an analytical gap between the [basis for the expert opinion] and the opinion proffered," the Court may exclude the testimony as unreliable. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

"[C]ourts consider the following non-exclusive list of factors when conducting the reliability inquiry: (1) whether the theory or technique has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error of the method used and the existence and maintenance of standards controlling the technique's operation; and (4) whether the theory or method has been generally accepted by the scientific community." *Johnson*, 685 F.3d at 459 (internal quotation marks omitted). But these factors "may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of [the] testimony." *Kumho*, 526 U.S. at 150.

The burden is on the proponent of the expert testimony to establish its admissibility by a preponderance of the evidence. *See Daubert*, 509 U.S. at 592 n.10; *see also Johnson*, 685 F.3d at 459. The Court's inquiry is flexible in that "[t]he relevance and reliability of expert testimony turns upon its nature and the purpose for which its proponent offers it." *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010) (citation omitted). "As a general rule, questions relating to the bases and sources

of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the [trier of fact's] consideration." *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

## Discussion

Defendants contend that, "[i]n his Report, Staton criticizes Officer Rowden's conduct based upon (1) irrelevant alleged deviations from 'good police procedure,' (2) irrelevant alleged misconduct that does not violate federal law, and (3) irrelevant alleged misconduct as to which no actionable claim is asserted. Staton further expresses opinions that are speculative, conclusory, or otherwise irrelevant, as well as opinions bearing directly upon the credibility of witnesses." Dkt. No. 83 at 13. They argue that "all of those opinions that follow should be excluded from evidence under the *Daubert/Kumho* standards, as well as under several other evidentiary rules." *Id.* at 9. Defendants assert that these specified "opinions are impermissibly speculative, impermissibly attempt to convey a legal standard, impermissibly opine on others' mental states, and/or will not be helpful to the jury because they are irrelevant to any fact in issue" and that "[t]he Court should preclude Staton from proffering those opinions before the jury, in accordance with Rule 702 of the Federal Rules of Evidence, and settled jurisprudence as to the allowable scope of opinions by police procedures experts." *Id.* at 30.

Plaintiffs respond that

> Defendants do not question Staton's qualifications. Nor can they. Staton's own report – which Defendants included in their appendix – demonstrates his extensive experience in the field. By way of background, Staton is a retired police officer having obtained the rank of Detective with the Austin Police Department. Staton started his police career in February, 1975 and retired in August, 2000. The majority of Staton's service was spent in the tactical arena, including eight years on a full-time SWAT team. The last three years Staton was assigned as an instructor in the Police Academy, teaching use of force skills to cadets and veteran officers. Since retiring Staton has continued teaching in the police use of force field on a regular basis, currently accumulating eighteen years of teaching experience and over forty years of law enforcement related experience. Thus, Staton's background supports that he is experienced in the fields of, among other things, probable cause, reasonable suspicion, use of force, police practices and analysis. Instead, Defendants question the relevance and reliability of his testimony. In the process, the Defendants take a rather narrow view of the law and Staton's opinions to make both arguments. A more accurate analysis, however, reveals that Staton's opinions are both relevant and reliable.

Dkt. No. 96 at 3-4.

In reply, Defendants contend that "Plaintiffs concede that their expert, Staton, may not offer opinions on legal standards, proffer legal conclusions, opine on witness credibility, or speculate on subjective mental states or personal motivations"; that "the Court should grant the Defendants' objections to Staton's opinions as requested in sections IV-B-3, -6, -7, -9, and -10 of their Motion"; that "all that is in issue are Staton's opinions that are the subject of Motion sections IV-B-1, -2, -4, -5, and -8"; and that "[t]he Court should grant the Defendants' remaining objections because the subject-matter of Staton's remaining testimony is irrelevant to either the objective reasonableness of Officer Rowden's uses of force or the existence of a City policy that

could result in § 1983 liability based upon Officer Rowden's uses of force." Dkt. No. 101 at 1-2.

The Court will address in turn each of the 10 sets of opinions that Defendants' Motion to Exclude challenges, in the order that Defendants presented them.

I.   <u>The three officers improperly handled the initial investigation of the 9-1-1 call.</u>

Defendants seeks to exclude Staton's opinion in section V, paragraphs 1 through 8 of his Report that "the three responding officers should have handled events preceding Officer Rowden's confrontation with Harper differently." Dkt. No. 83 at 15. Defendants explain that, although "Staton's Report is rife with purely speculative opinions as to what might have occurred if the officers had handled the 9-1-1 call differently preceding Officer Rowden's one-on-one encounter with Harper, or if different decisions had been made," "no expert, no matter how good his credentials, is permitted to speculate as to what might have happened under other factual scenarios." *Id.* at 13.

In their response, Plaintiffs contend that "[a] thorough review of Staton's report plainly reveals that in paragraphs V-1 through V-8, he offers numerous opinions regarding forensic investigation, police procedure, and training. None of his opinions involve an evaluation of witness credibility. None of his statements involve speculation as to what 'might have happened' if proper procedures were followed. None of his statements purport to offer opinions on legal standards or legal conclusions. Accordingly, Defendants' arguments and authorities that address such categories of inadmissible testimony are necessarily misplaced." Dkt. No. 96 at 5-6.

In reply, Defendants explain that

> Plaintiffs do not challenge the Defendants' contention that alleged deviations from "proper" police procedure are irrelevant to the excessive force inquiry. (See Response at 5-6.) Accordingly, this Court should follow the extended line of Fifth Circuit precedent (see Motion at 10-15) on this issue, and preclude any testimony by Staton regarding alleged deviations from "proper" procedures that occurred before Officer Rowden's use of force against Harper. Allowing such testimony will merely confuse the jury into believing that any such alleged deviations may form a basis for finding that Officer Rowden's use of force was objectively unreasonable.

Dkt. No. 101 at 3.

The Court agrees with Defendants and a prior ruling by another judge of this Court that, for the reasons that Defendants explain in their Motion to Exclude and reply, "Staton cannot testify that Officer [Rowden's or other officers'] actions leading up to the shooting violated police procedures" and cannot "speculate about how the outcome of the incident might have been different had [Officer Rowden or other officers] followed such procedures." *Flanagan v. City of Dallas*, No. 3:13-cv-4231-M-BK, 2017 WL 2817424, at *3 (N.D. Tex. May 25, 2017). The Court therefore GRANTS Defendants' motion to exclude this testimony.

II.    <u>The officers' alleged failures to follow proper police procedure.</u>

Defendants contend that "Staton's opinions stated in paragraphs V-1 through V-8 of his Report relate to decisions made that precede Officer Rowden's actual physical confrontation and use of deadly force"; that "Staton's opinions relate to alleged deviations from what Staton regards as proper procedures"; that "Staton's opinions in those paragraphs do not pertain Officer Rowden's actual use of force"; and that "the settled rule in the Fifth Circuit is that an officer's actions leading up to a use of deadly

force, including any alleged deviations from 'standard' or 'proper' police procedure, are not relevant to the excessive force inquiry." Dkt. No. 83 at 16. Defendants argue that

> it is beyond dispute that all of Staton's opinions that Officer Rowden (or the other two officers) used "improper tactics" or made procedural missteps prior to the moment that Officer Rowden used deadly force are utterly irrelevant to the excessive force inquiry. And, because Officer Rowden's alleged procedural missteps are irrelevant, by definition any expert opinions regarding them will not help the jury to understand the evidence or to determine a fact in issue. In fact, placing such opinions before the jury would serve only to confuse the jury, and invite the jury to find that Officer Rowden's actions were unreasonable not because of Officer Rowden's judgment that that Harper presented an imminent threat at the moment that Officer Rowden used deadly force, but because the initial approach and foot pursuit was "unreasonable." Therefore, pursuant to Rule 702, the Court must exclude any testimony by Staton on that topic.
>
> Finally, the Court ought not overlook that Staton himself conceded in his deposition that Officer Rowden's actions leading up to the shooting itself are not relevant to whether Officer Rowden's use of deadly force was proper. (Appx. at 20, 24 (Staton Depos. at page 19 lines 14-21, page 27 lines 8-17).) For all of these reasons, Staton's opinions regarding what he believes are deviations from proper police procedures are will not assist the jury, and should be excluded.

*Id.* at 21.

> Plaintiffs respond that
>
> Defendants cite numerous authorities to support their argument that Staton's testimony is "not relevant to the excessive-force inquiry" and do "not relate to any issue to be resolved with respect to the Plaintiffs' constitutional claims." Defendants, however, mistakenly assume that Plaintiffs' only constitutional claims arise out of Officer Rowden's actions (to which a qualified-immunity defense is available). As this Court is certainly well aware, the Supreme Court of the United States has long recognized that a plaintiff may assert a claim for constitutional violations against a municipality. Not only can these claims can arise out of a municipality's unconstitutional custom or policy, they can also arise out of a municipality's failure to properly train its employees. Here, Plaintiffs have alleged both.

This Court, therefore, should deny Defendants' attempt to hamstring Plaintiffs' case by preventing them from offering evidence of how a reasonable municipality would have trained its officers. It is well established that evidence of inaction – specifically, failure to investigate and discipline employees in the face of widespread constitutional violations – can support an inference that an unconstitutional custom or practice has been unofficially adopted by a municipality. The same result should follow here: Staton's testimony that the City of Dallas failed to notice that Rowden did anything wrong – whether intentionally or negligently – is certainly relevant to Plaintiffs' *Monell* claims, and Defendants offer no authorities to suggest otherwise.

Indeed, the authorities that Defendants cite in these sections address nothing but qualified-immunity arguments. None of these authorities discuss whether such opinions are admissible for *Monell* claims. Accordingly, even if this Court were to conclude that Staton's opinions address topics that are irrelevant to Plaintiffs' claims against Rowden, Defendants have failed to offer any authority to suggest that that they lack relevance to his claims against the City. The proper remedy, therefore, is not exclusion of this testimony, but an instruction to the jury regarding consideration of the evidence.

Dkt. No. 96 at 6-8 (footnotes omitted).

In reply, Defendants explain that they "object to Staton's opinions regarding alleged deviations by the officers to what are generally referred to as 'standard' or 'proper' police procedure that preceded Officer Rowden's use of force against Harper, because any such deviations are categorically irrelevant to the jury's evaluation of the reasonableness of Officer Rowden's use of deadly force and Harper." Dkt. No. 101 at 2. Defendants contend that, "[b]ecause the Plaintiffs are foreclosed from using alleged deviations from 'proper' police procedures to form the basis for the constitutional excessive force claim, they make the specious argument that the alleged deviations are relevant to their failure-to-train claim against the City," but "Plaintiffs fail to cite even a single case authority to support the machination of making police decisions that are

irrelevant to the excessive force issue relevant by lumping them into a generalized 'failure to train' claim." *Id.* at 3.

According to Defendants, "[m]yriad cases address the need to [] closely link an alleged training deficiency to the particulars of the underlying constitutional violation"; "[a] plaintiff asserting § 1983 liability for a failure to train must show (1) the municipality's training policy procedures were inadequate; (2) the municipality was deliberately indifferent in adopting its training policy[,] and (3) the inadequate training policy directly caused the constitutional violation in issue": and "the long-settled rule is that a plaintiff prove that a deficiency in the training program is closely related to the ultimate injury." *Id.* (emphasis removed).

Defendants contend that, while "Plaintiffs accuse the Defendants of 'attempt[ing] to hamstring the Plaintiffs' case by preventing them from offering evidence of how a reasonable municipality would have trained its officers,'" "Plaintiffs unquestionably may offer evidence regarding the City's training of its police officers, provided that the training evidence is pertinent to the Plaintiffs' claims in the sense that it is 'closely related' to the actual cause of the alleged violation of constitutional rights" – here, "the allegation that Officer Rowden used excessive force against James Harper." *Id.* at 4.

But, Defendants argue, "[t]he City's training of its police officers on matters unrelated to the use of force, i.e., training on those matters of police procedures that preceded Officer Rowden's physical encounter with Harper, are not in any cognizable manner 'closely related' to use-of-force training." *Id.* According to Defendants, that

includes Plaintiffs' contention "that Staton should be permitted to testify about Dallas Police Department training of officers not with regard to the use of (deadly) force, but about instead about training that allegedly led to procedural missteps preceding Officer Rowden's physical encounter with Harper: (1) 'Rowden's decision to continue to chase after individuals suspected but not known to have committed a serious crime' (Appx. at 8); or (2) 'Rowden's decision to chase Harper combined with the lack of intermediate weapons' (Appx. at 9-10)." *Id.* at 5. Defendants assert that "[n]ot only is police department training on when and how to engage in foot pursuits not closely related to Officer Rowden's later decision to use deadly force to defend against Harper's unlawful and violent resistance to arrest, the well-settled rule is that there must be more than a 'but for' link between the lack of training (foot pursuits) and the institutional injury at issue (use of unlawful deadly force)." *Id.*

Defendants argue that "the Court should disallow Staton's opinions regarding the officers' alleged failures to follow 'proper' police procedure, the wisdom of Officer Rowden's decision to pursue Harper on foot, or any alleged training deficiencies regarding 'proper' police procedure." *Id.*

For the same reasons discussed in the section above and for the reasons explained in Defendants' Motion to Exclude and reply, the Court excludes testimony of Staton's opinions regarding Officer Rowden's and other officers' alleged failures to follow proper police procedure in the events preceding Officer Rowden's physical encounter with Harper or any alleged training deficiencies regarding proper police procedure in connection with the events preceding Officer Rowden's physical encounter

with Harper. As Defendants concede, Plaintiffs may offer evidence regarding the City's training of its police officers that is pertinent to Plaintiffs' claims that the City of Dallas and Officer Rowden are liable based on Officer Rowden's alleged use of excessive force against Harper, which is what Plaintiffs have pleaded in their operative Third Amended Complaint. *See* Dkt. No. 45. But the Court agrees with Defendants' arguments that testimony by Staton regarding training that allegedly led to procedural missteps preceding Officer Rowden's physical encounter with Harper, including as policies regarding foot pursuits, must be excluded under Rule 702's relevancy requirement. *Accord Flanagan*, 2017 WL 2817424, at *3.

III. <u>The likely cause of Officer Rowden's physical injuries.</u>

Defendants contend that, in paragraph V-9 of his Report, "Staton's opinion that Officer Rowden's injuries were 'most likely from going through heavy brush' is mere speculation, and must be excluded." Dkt. No. 83 at 22. According to Defendants, "Staton's Report does not identify what specific facts back up his opinion that foliage, rather than human physical contact, caused Officer Rowden's visible physical injuries, and Staton was unable to provide factual support for that opinion in his deposition," and, "[t]herefore, the Court should exclude Staton's speculative opinions regarding the cause of Officer Rowden's injuries." *Id.*

Plaintiffs respond that "almost the entirety of Defendants' motion is devoted to arguments that Stanton may not (a) evaluate witness credibility; (b) speculate as to what 'might have happened' if proper procedures were followed; or (c) offer opinions on legal standards or legal conclusions"; that "Plaintiffs do not quarrel with Defendants'

authorities stating that these are not the subjects on which an expert can testify"; and that Plaintiffs "do not intend to ask Staton to opine on (a) whether Rowden's injuries were caused by brush.... Accordingly, this Court should deny the arguments raised in section[] IV-B-3 ... can be denied as moot." Dkt. No. 96 at 5 & n.2.

Defendants reply that, while conceding "that their expert, Staton, may not offer opinions on legal standards, proffer legal conclusions, opine on witness credibility, speculate upon others' subjective mental states or personal motivations, or speculate on what might have happened if 'proper procedures' had been followed," Plaintiffs are mistaken that these issues are moot where the Motion to Exclude "seeks to prevent testimony on the given topic areas" and so focuses "not merely upon what the Plaintiffs intend to ask, but also on what their expert might say," and "[t]he Court should grant the Motion as to the subject matter of the foregoing sections of the Motion, so that the testimony is precluded – not merely questions about the testimony." Dkt. No. 101 at 2 (emphasis removed).

The Court agrees. As a general matter, a motion or request within a motion is mooted by events or actions making the relief sought unnecessary or impossible to grant on the motion, not by the non-movant agreeing to the relief sought or conceding the basis of the movant's request for the relief sought. The Court determines that, in the conceded absence of any factual support for Staton's opinion that Officer Rowden's injuries were most likely from going through heavy brush renders the opinion mere speculation, the opinion and any testimony of that opinion must be excluded as unsupported speculation.

IV.  The decision to pursue Harper on foot and lack of intermediate weapons.

Defendants contend that "Staton opines in paragraph V-10 of his Report that Rowden's decision to chase Harper combined with the lack of intermediate weapons suggest a lack of training to be part of the reason that Rowden utilized more force than was required'" but that "Staton's only support for that opinion is that the DPD does not annually train its officers on physical skills." Dkt. No. 83 at 22 (citation omitted). Defendants contend that "the Court should disallow this opinion" where "[t]here is [a] clear disconnect between Officer Rowden's decision to purse Harper without having intermediate weapons and the alleged lack of annual DPD physical skills training," where "Staton conceded in his deposition that he was speculating," and where "[s]ettled law requires the Court to exclude Staton's speculative opinions." *Id.* at 22, 23.

Plaintiffs respond that there is not a clear disconnect, as Defendants contend, where, "[f]irst, as Staton noted in his supplemental report, his opinions are buttressed by Rowden's own testimony," and, "[s]econd, Defendants left out an important part of Staton's deposition testimony in their motion," where he testified that "'Officer Rowden would have had more options to control the situation if he had been properly trained and had the equipment that the department said he should have with him at all times.'" Dkt. No. 96 at 10 (footnote omitted).

According to Plaintiffs, "Defendants do not offer any argument or authority to suggest that [this] statement above is 'speculative.' Nor do they attempt to argue that Staton is not qualified to opine on the proper training and equipment for officers engaged in this type of activity, as it is undisputed that Staton served for several years

on a special weapons and tactics ('SWAT') team." *Id.* at 11. Plaintiffs argue that, "[i]n the absence of any allegation to suggest that Staton is not qualified to form such opinions, this case simply presents a classic 'battle of the experts,' where the proper remedy for challenging opinions is cross-examination, not exclusion." *Id.* (footnote omitted).

Defendants reply that, "[d]espite the Plaintiffs' attempt to deflect the discussion elsewhere, Staton specifically agreed that his opinion that 'Rowden utilized more force than the situation required' was speculative," and "[e]xperts are not permitted to speculate, a limitation that the Plaintiffs here acknowledge." Dkt. No. 101 at 6.

According to Defendants, "[f]aced with Staton's inescapable admission that he was speculating that Officer 'Rowden used more force than the situation required,' the Plaintiffs now attempt to change the subject – to an opinion that Staton did not provide in his report – that 'Officer Rowden would have had more options to control the situation if he had been properly trained and had the equipment that the department said he should have with him at all times,'" "[b]ut, Staton did not offer that opinion in his report." *Id.* at 6-7. Defendants explain that Federal Rule of Civil Procedure "26(a)(2)(B) requires that an expert's report 'contain a complete statement of all opinions to be expressed and the basis and reasons therefor'" and argue that "Staton's opinion is inadmissible at trial." *Id.* at 7.

And Defendant contend that "Staton's previously undisclosed opinion ... improperly communicates an implicit legal standard to the jury, that having 'more options' was required," which "is incorrect; police officers not are required to use the

least intrusive or even less intrusive alternatives when using force. The only requirement is that the force used be objectively reasonable under the circumstances as are reasonably perceived by the officer." *Id.* at 7-8.

Defendants also argue that, "while the Plaintiffs' complain that the Defendants 'left out an important part of Staton's deposition testimony' (Response at 9), the Plaintiffs themselves omit key portions of the relevant exchange," where "Plaintiffs include part of the next question, but omit the remainder of the question – and Staton's answer, too," in which Staton testified that "'I think I can comfortably say that if Rowden was attacked and was losing and felt that his opponent was in possession of or getting possession of a gun, then deadly force would have been justified.'" *Id.* at 7.

Defendants conclude that "the Court should disallow Staton's speculative opinion that Officer Rowden 'used more force than the situation required'" and "also exclude Staton's undisclosed opinion that 'Officer Rowden would have had more options to control the situation if he had been properly trained,'" where "[w]hether Officer Rowden would have had 'more options' is irrelevant to the jury's determination whether the force actually used was objectively reasonable, and the injection into the trial of such testimony will not merely be unhelpful, it will confuse and mislead the jury." *Id.* at 8.

The Court agrees with Defendants that Staton cannot permissibly speculate in his testimony that a lack of training caused Officer Rowden to utilize more force than the situation required. *Cf. Flanagan*, 2017 WL 2817424, at *4. And Staton's opinion that Officer Rowden would have had more options to control the situation if he had

been properly trained and had the equipment that the Dallas Police Department said that he should have with him at all times must be excluded because it was not disclosed in the expert report and because it is legally irrelevant to – and likely to confuse and mislead the jury in its determination – whether the force actually used was clearly excessive and unreasonable given the totality of circumstances, including the options available to Officer Rowden at the scene. The Court therefore GRANTS Defendants' motion to exclude this testimony.

V.      DPD's post-shooting investigations into the encounter.

        Defendants contend that, while "Paragraphs V-14 through V-17 of Staton's Report contain several opinions that find fault with the adequacy of the DPD's investigations of the shooting," "the adequacy of the post-shooting investigations is irrelevant to the issues to be decided by the jury – whether Officer Rowden's use of deadly force was unlawful and, if so, whether the City is liable under § 1983." Dkt. No. 83 at 23. According to Defendants, "[n]one of Staton's opinions regarding the DPD's investigative focus or the manner in which the investigations were conducted will assist the jury in resolving the issues to be tried: (1) whether Officer Rowden used clearly excessive and objectively unreasonable force against Harper; (2) whether a reasonable officer in Officer Rowden's circumstances could have believed that Officer Rowden's use of force against Harper was lawful; and (3) whether the Dallas City Council was deliberately indifferent to DPD custom of deficient officer training or supervision that was the moving force and actual cause of an unlawful use of force by Officer Rowden." *Id.*

Defendants contend that, as to Paragraph V-14 of Staton's Report, "even if Staton were correct in his assessment of the DPD investigation, that opinion will not assist the jury in resolving whether Officer Rowden used excessive force, or whether there was a DPD custom of deficient officer training or supervision. Rather, Staton's opinion is a quibble about investigative priorities and focus. As that opinion will not assist the jury, the Court should exclude it." *Id.* at 23-24.

As to Paragraph V-15 of Staton's Report, Defendants assert contend that, although "Staton focuses upon evidence that he believes the DPD investigations should have focused upon, and asserts that the DPD investigation should have reached a different conclusion," "those opinions would not be helpful to the jury because they are irrelevant; the jury will not be called upon to decide whether DPD investigators reached factually correct conclusions." *Id.* at 24. And Defendants contend that Staton's complaint that "'[n]othing was mentioned in the [DPD investigation] summary as to the extremely poor decision to enter the house. Nothing was mentioned in the summary about the dangerous decision to chase after three suspects thought to be armed'" "must also be excluded," because "an officer's decisions leading up to a use of (deadly) force are simply irrelevant to the lawfulness of the use of force itself" and "Staton must not be permitted to inject such irrelevancies into juror's minds through the artifice of discussing another irrelevant issue." *Id.* Defendants further note that "Staton also opines in paragraph V-15 that '[t]his internal affairs investigation appears to have been for show and not an objective search for the truth,'" and Defendants argue that "[t]hat opinion, and any others like it, should be excluded for the same reasons

that Staton's other opinions regarding the adequacy of the DPD's post-shooting investigation should be excluded: Staton's views are not relevant, and will not assist the jury in resolving any issue to be determined at trial." *Id.* According to Defendants, the "Court should disallow any testimony regarding the adequacy of the DPD's Internal Affairs Division investigation because it is irrelevant, and therefore not helpful to the jury." *Id.* at 28.

Plaintiffs respond that

Defendants cite numerous authorities to support their argument that Staton's testimony is "not relevant to the excessive-force inquiry" and do "not relate to any issue to be resolved with respect to the Plaintiffs' constitutional claims." Defendants, however, mistakenly assume that Plaintiffs' only constitutional claims arise out of Officer Rowden's actions (to which a qualified-immunity defense is available). As this Court is certainly well aware, the Supreme Court of the United States has long recognized that a plaintiff may assert a claim for constitutional violations against a municipality. Not only can these claims can arise out of a municipality's unconstitutional custom or policy, they can also arise out of a municipality's failure to properly train its employees. Here, Plaintiffs have alleged both.

This Court, therefore, should deny Defendants' attempt to hamstring Plaintiffs' case by preventing them from offering evidence of how a reasonable municipality would have trained its officers. It is well established that evidence of inaction – specifically, failure to investigate and discipline employees in the face of widespread constitutional violations – can support an inference that an unconstitutional custom or practice has been unofficially adopted by a municipality. The same result should follow here: Staton's testimony that the City of Dallas failed to notice that Rowden did anything wrong – whether intentionally or negligently – is certainly relevant to Plaintiffs' *Monell* claims, and Defendants offer no authorities to suggest otherwise.

Indeed, the authorities that Defendants cite in these sections address nothing but qualified-immunity arguments. None of these authorities discuss whether such opinions are admissible for *Monell* claims. Accordingly, even if this Court were to conclude that Staton's opinions address topics that are irrelevant to Plaintiffs' claims against Rowden, Defendants have failed to offer any authority to suggest that

that they lack relevance to his claims against the City. The proper remedy, therefore, is not exclusion of this testimony, but an instruction to the jury regarding consideration of the evidence.

Finally, it is important to note that Staton should be allowed to opine on the investigation that was conducted because the evidence (or lack thereof) supports Plaintiffs' allegations of a cover-up of the City's failure to adequately supervise, discipline, or train its officers. .... Because the evidence suggests that the City has evidence of – but has not produced – voluminous evidence to suggest that it is covering up its inadequate training programs, Staton should be permitted to opine about its insufficiency by relying on the evidence that is already in the record.

Dkt. No. 96 at 6-9 (footnotes omitted).

Defendants reply that "Plaintiffs' complaint does not allege a 'cover-up,' either in this specific instance or as a matter of City policy"; that "Plaintiffs' tactic of making ad hoc additions to their pleadings and theories to shoehorn into the trial inadmissible testimony should not be rewarded"; and that "the Court should disallow Staton's opinions about the adequacy of the Dallas Police Department's post-shooting investigations." Dkt. No. 101 at 8-9.

The Court agrees with Defendants' assessment of the irrelevance to Staton's expert testimony's admissibility of Plaintiff's justification based on an alleged cover-up of the City's failure to adequately supervise, discipline, or train its officers or alleged failure to produce discovery materials. And, for the reasons that Defendants have explained in their briefing, the Court determines that testimony by Staton regarding his opinions on the adequacy of the Dallas Police Department's post-shooting investigation or the adequacy of the DPD's Internal Affairs Division must be excluded as legally irrelevant to, and unlikely to assist the jury in resolving, Plaintiffs' actual

claims against Officer Rowden and the City of Dallas based on Officer Rowden's alleged use of excessive force. *Accord Flanagan*, 2017 WL 2817424, at *4.

VI.    The subjective thought processes of DPD investigators.

Defendants also take issue with Staton's opinions "in Report paragraph V-16 that the DPD investigators ignored or discounted affidavits by two witnesses to the shooting, Harper's gang associates Arthur Dixon and James Fullwood, because the DPD investigators improperly discounted the affidavits." Dkt. No. 83 at 24-25. According to Defendants, "Staton ignores that the Dixon and Fullwood affidavits were procured by the Plaintiffs, and did not exist at the time the DPD investigation had concluded," and "Staton's opinion regarding the subjective thought processes and motivations of the DPD investigators is inadmissible because it is based upon raw speculation," where "Staton has no information to support his guess as to what the DPD's investigators were thinking." *Id.* at 25. Defendants assert that "any opinions by Staton as to the subjective thought processes of the DPD's investigators must be excluded." *Id.*

Plaintiffs respond that they "do not intend to ask Staton to opine on ... (b) the internal thought process of DPD investigators.... Accordingly, this Court should deny the arguments raised in section[] ... IV-B-6 ... can be denied as moot." Dkt. No. 96 at 5 n.2.

Defendants reply that, while conceding "that their expert, Staton, may not offer opinions on legal standards, proffer legal conclusions, opine on witness credibility, speculate upon others' subjective mental states or personal motivations, or speculate

on what might have happened if 'proper procedures' had been followed," Plaintiffs are mistaken that these issues are moot where the Motion to Exclude "seeks to prevent testimony on the given topic areas" and so focuses "not merely upon what the Plaintiffs intend to ask, but also on what their expert might say," and "[t]he Court should grant the Motion as to the subject matter of the foregoing sections of the Motion, so that the testimony is precluded – not merely questions about the testimony." Dkt. No. 101 at 2 (emphasis removed).

For the same reasons discussed above, the Court agrees with Defendants that this portion of their Motion to Exclude is not moot and, as conceded by Plaintiffs and for the reasons that Defendants explain in their briefing, determines that any testimony by Staton of an opinion as to internal or subjective thought processes of the Dallas Police Department's investigators is excluded.

VII.    <u>Officer Rowden's use of deadly force was unjustified.</u>

According to Defendants, "[i]n paragraph V-17 of his Report, Staton looks at the facts through the perspective of the Plaintiffs' alleged facts, and concludes that Officer Rowden's use of force was not justified." Dkt. No. 83 at 25. Defendants assert that "[t]his opinion should be excluded because a police procedures expert is not competent to opine whether an officer's actions were 'justified'" and that "[t]he Court should exclude the foregoing opinion, as well as all opinions by Staton that explicitly or implicitly state a legal conclusion." *Id.* at 25, 26.

Plaintiffs respond that they "do not intend to ask Staton to opine on ... (c) legal standards.... Accordingly, this Court should deny the arguments raised in section[] ... IV-B-7 ... can be denied as moot." Dkt. No. 96 at 5 n.2.

Defendants reply that, while conceding "that their expert, Staton, may not offer opinions on legal standards, proffer legal conclusions, opine on witness credibility, speculate upon others' subjective mental states or personal motivations, or speculate on what might have happened if 'proper procedures' had been followed," Plaintiffs are mistaken that these issues are moot where the Motion to Exclude "seeks to prevent testimony on the given topic areas" and so focuses "not merely upon what the Plaintiffs intend to ask, but also on what their expert might say," and "[t]he Court should grant the Motion as to the subject matter of the foregoing sections of the Motion, so that the testimony is precluded – not merely questions about the testimony." Dkt. No. 101 at 2 (emphasis removed).

For the same reasons discussed above, the Court agrees with Defendants that this portion of their Motion to Exclude is not moot and, as conceded by Plaintiffs and for the reasons that Defendants explain in their briefing, determines that any testimony by Staton of an opinion in the form of a legal conclusion that Officer Rowden's use of force was not justified is excluded.

VIII.    The DPD's customs and practices were instrumental in an unlawful use of force.

Defendants explain that, "[i]n paragraph V-18 of his Report, Staton opines that the jury 'could believe the training Rowden received from the DPD (or lack thereof) and the customs and practice of the DPD were instrumental in the tactics used by Rowden

-26-

that led to the unnecessary use of deadly force against Harper." Dkt. No. 83 at 26. Defendants contend that "[t]he Court should exclude this opinion because, as demonstrated above, the 'tactics' used by Officer Rowden prior to the actual confrontation with Harper are not relevant to the use-of-force inquiry." *Id.*

Plaintiffs respond that

Defendants cite numerous authorities to support their argument that Staton's testimony is "not relevant to the excessive-force inquiry" and do "not relate to any issue to be resolved with respect to the Plaintiffs' constitutional claims." Defendants, however, mistakenly assume that Plaintiffs' only constitutional claims arise out of Officer Rowden's actions (to which a qualified-immunity defense is available). As this Court is certainly well aware, the Supreme Court of the United States has long recognized that a plaintiff may assert a claim for constitutional violations against a municipality. Not only can these claims can arise out of a municipality's unconstitutional custom or policy, they can also arise out of a municipality's failure to properly train its employees. Here, Plaintiffs have alleged both.

This Court, therefore, should deny Defendants' attempt to hamstring Plaintiffs' case by preventing them from offering evidence of how a reasonable municipality would have trained its officers. It is well established that evidence of inaction – specifically, failure to investigate and discipline employees in the face of widespread constitutional violations – can support an inference that an unconstitutional custom or practice has been unofficially adopted by a municipality. The same result should follow here: Staton's testimony that the City of Dallas failed to notice that Rowden did anything wrong – whether intentionally or negligently – is certainly relevant to Plaintiffs' *Monell* claims, and Defendants offer no authorities to suggest otherwise.

Indeed, the authorities that Defendants cite in these sections address nothing but qualified-immunity arguments. None of these authorities discuss whether such opinions are admissible for *Monell* claims. Accordingly, even if this Court were to conclude that Staton's opinions address topics that are irrelevant to Plaintiffs' claims against Rowden, Defendants have failed to offer any authority to suggest that that they lack relevance to his claims against the City. The proper remedy, therefore, is not exclusion of this testimony, but an instruction to the jury regarding consideration of the evidence.

Dkt. No. 96 at 5-8 (footnotes omitted).

Defendants reply that their "objections largely mirror their objections to Staton's anticipated testimony about supposed deviations from proper police procedure the preceded Officer Rowden's physical encounter with Harper, and the Officer Rowden's uses of force that are the issue in this litigation." Dkt. No. 101 at 9 (emphasis removed). According to Defendants, "[b]ecause Staton's opinions do not relate to any police department customs regarding use of force, or officer training on the use of force, those opinions are not 'closely related' to Officer Rowden's alleged use of unlawful deadly force"; "those opinions will not be helpful to the jury, and should be excluded"; and "Staton's opinions are categorically irrelevant to the jury's evaluation of the reasonableness of Officer Rowden's use of deadly force and Harper, and should be excluded." *Id.*

The Court GRANTS Defendants' motion to exclude this testimony only in part. For the reasons explained in the sections above, the Court excludes testimony by Staton of opinion regarding training in connection with the events and actions that preceded Officer Rowden's physical encounter with Harper. But, as Defendants concede, Plaintiffs may offer evidence regarding the City's training of its police officers that is pertinent to Plaintiffs' claims that the City of Dallas and Officer Rowden are liable based on Officer Rowden's alleged use of excessive force against Harper.

IX.    A jury could believe racial bias played a part in Officer Staton's use of force.

According to Defendants, "Staton opines in paragraph V-18 of his Report that '[i]t is also reasonable for the triers of fact to believe, after viewing all the evidence,

-28-

that racial bias played some part in this use of force.'" Dkt. No. 83 at 20. Defendants contend that "Staton's opinion should be excluded for two reasons. First, Staton does not even have an opinion that Officer Rowden acted out of racial bias," and "it would be clearly improper for Staton to inject race into the equation." *Id.* at 26, 27. And, second, "Plaintiffs have stipulated to the dismissal of all claims except for 'excessive force against the City and Rowden,'" and "[t]he Court has approved that stipulation." *Id.* at 27. Defendant argue that, "[t]herefore, the Court should disallow any raw speculations by Staton that Officer Rowden's actions were motivated by racial animus." *Id.* at 28.

Plaintiffs respond that they "do not intend to ask Staton to opine on ... (d) Rowden's racial bias. Accordingly, this Court should deny the arguments raised in section[] ... IV-B-9 ... can be denied as moot." Dkt. No. 96 at 5 n.2.

Defendants reply that, while conceding "that their expert, Staton, may not offer opinions on legal standards, proffer legal conclusions, opine on witness credibility, speculate upon others' subjective mental states or personal motivations, or speculate on what might have happened if 'proper procedures' had been followed," Plaintiffs are mistaken that these issues are moot where the Motion to Exclude "seeks to prevent testimony on the given topic areas" and so focuses "not merely upon what the Plaintiffs intend to ask, but also on what their expert might say," and "[t]he Court should grant the Motion as to the subject matter of the foregoing sections of the Motion, so that the testimony is precluded – not merely questions about the testimony." Dkt. No. 101 at 2 (emphasis removed).

For the same reasons discussed above, the Court again agrees with Defendants that this portion of their Motion to Exclude is not moot and, as conceded by Plaintiffs and for the reasons that Defendants explain in their briefing, determines that any testimony by Staton of an opinion that Officer Rowden's actions were motivated by racial animus or racial bias is excluded.

X.   Opinions regarding deliberate indifference.

Defendants explain that "Paragraph V-19 of Staton's Report largely concerns alleged the deliberate indifference by the City" and that, "[s]etting aside Staton's conspicuous omission of the identity of a specific DPD official to whom the deliberate indifference is to be attributed, the Court must exclude Staton's opinions on deliberate indifference." Dkt. No. 83 at 28. Defendants argue that "[d]eliberate indifference, of course, refers to a legal standard for imposing § 1983 liability on a municipality"; that "expert witnesses are not competent to opine upon an individual's mental state"; and that "the Court must preclude any testimony by Staton regarding deliberate indifference, especially opinions that purports to assign liability." *Id.* at 28, 29. Defendants further note that "[t]he Fifth Circuit and this Court have excluded similar expert testimony on whether a person acted with deliberate indifference" and that "Staton concedes that it is not his role to opine whether there was deliberate indifference on the part of the City's policymakers and, further, he had not actually formed an opinion on that issue." *Id.* at 29.

Plaintiffs respond that they "do not intend to ask Staton to opine on ... (c) legal standards.... Accordingly, this Court should deny the arguments raised in section[] ... IV-B-10 can be denied as moot." Dkt. No. 96 at 5 n.2.

Defendants reply that, while conceding "that their expert, Staton, may not offer opinions on legal standards, proffer legal conclusions, opine on witness credibility, speculate upon others' subjective mental states or personal motivations, or speculate on what might have happened if 'proper procedures' had been followed," Plaintiffs are mistaken that these issues are moot where the Motion to Exclude "seeks to prevent testimony on the given topic areas" and so focuses "not merely upon what the Plaintiffs intend to ask, but also on what their expert might say," and "[t]he Court should grant the Motion as to the subject matter of the foregoing sections of the Motion, so that the testimony is precluded – not merely questions about the testimony." Dkt. No. 101 at 2 (emphasis removed).

For the same reasons discussed above, the Court again agrees with Defendants that this portion of their Motion to Exclude is not moot and, as conceded by Plaintiffs, determines that any testimony by Staton of an opinion as to whether any defendant or agent or policymaker of the City of Dallas or the Dallas Police Department was deliberate indifferent is excluded. *Accord Flanagan*, 2017 WL 2817424, at *4-*5.

## Conclusion

For the reasons and to the extent explained above, the Court GRANTS in part and DENIES in part Defendants' Motion to Exclude Testimony of the Plaintiffs' Retained Expert Witness Jerry Staton [Dkt. No. 83].

SO ORDERED.

DATED: December 6, 2017

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE